UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 1:22-cv-11856

| | |
|---|---|
| **TARA HARMON,** *Plaintiff*, <br><br> v. <br><br> **BOSTON MEDICAL CENTER,** *Defendant*. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1. Defendant violated Plaintiff's right to the free exercise of religion by requiring that, as a condition of her continued employment, she be injected with a product advertised as a COVID-19 vaccine, and (after Defendant had demonstrated that her sincerely held religious beliefs prevented her from being injected with the products) by terminating her employment. Defendant violated both the Civil Rights Act and the Massachusetts anti-discrimination law, M.G.L. c. 151B.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5 (f) and 28 U.S.C. §§ 1331 and 1343 (a) and has supplemental jurisdiction over State-law claims.

## PARTIES

3. Plaintiff Tara Harmon is an individual who resides in Scituate, Massachusetts.

4. Defendant Boston Medical Center is a corporation with a principal place of business at One Boston Medical Center Place, Boston, MA 02118; is a person within the meaning of 42 U.S.C. § 2000e (a); and is an employer within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5).

**EEOC CHARGE**

5.      Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC) (Charge No. 523-2022-00141).  The EEOC issued a right-to-sue notice on August 19, 2022.  Plaintiff brings this case within 90 days of receipt of the EEOC right-to-sue notice.  All preconditions for filing this lawsuit have been performed or have occurred.

**FACTS**

6.      Plaintiff commenced employment with Defendant as a registered nurse on or about September 11, 2000.  At the time of her discharge she was working in Defendant's cardiovascular clinic.  In the period June-August 2020, during the COVID-19 emergency, Defendant deployed Plaintiff away from the cardiovascular department to frontline work in the emergency department.

7.      On July 13, 2021, Defendant adopted a "COVID-19 Immunization Policy" that required all employees to be injected with products advertised as "COVID-19 vaccines."

8.      At all material times, Defendant knew or should have known that the products advertised as "COVID-19 vaccines" do not stop recipients from contracting and transmitting COVID-19.

9.      Plaintiff recovered from COVID-19 and has a degree of immunity against the disease that exceeds any temporary protection conferred by the products advertised as "COVID-19 vaccines."  Plaintiff had been part of a BMC-funded study of frontline nurses that showed that Plaintiff had COVID-19 antibodies.  Defendant was aware of these facts when it imposed the injection as a condition of continued employment and when it terminated Plaintiff's employment.

10.        Plaintiff adheres to the tenets of the Church of Universal Wisdom and requested an exemption from Defendant's "Immunization Policy" on religious grounds on August 24, 2021. Exhibit A.

11.        On September 24, 2021, Defendant denied Plaintiff's request. Exhibit B.

12.        Defendant terminated Plaintiff's employment on October 18, 2021. Exhibit C.

13.        The products known as "COVID-19 vaccines" produced by Johnson & Johnson, Moderna, and Pfizer do not prevent recipients from contracting and transmitting COVID-19.

14.        According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%.[1] As cardiologist Dr. Aseem Malhotra stated in the *European Scientist*:

> [W]hat was reported in the mainstream news as being 95% effective against infection was in fact relative risk reduction, not absolute risk reduction from the double blind randomized controlled trial that took place during the more lethal circulating post-Wuhan ancestral strain of the virus. That specific NEJM paper which underpinned the emergency use authorization of the Pfizer mRNA vaccine actually revealed an absolute risk reduction (ARR) of 0.84%. In other words, for every 119 individuals vaccinated one person would be protected from being infected... Furthermore, as newer and thankfully, less lethal, mutated strains became dominant, any protection against infection at the very least became less effective and likely completely ineffective, even if there is some significant (as yet to be fully determined in absolute individual terms) protection against serious illness and death.[2]

---

[1] https://www.thennt.com/review-covid-analysis-2020/
[2] Dr. Aseem Malhotra, "Being Pro-Covid 19 Vaccines and Pro-transparency are not mutually exclusive – ending all mandates globally and accessing the raw data is now essential to restore trust," *European Scientist* (August 16, 2022).

https://www.europeanscientist.com/en/features/being-pro-covid-19-vaccines-and-pro-transparency-are-not-mutually-exclusive-ending-all-mandates-globally-and-accessing-the-raw-data-is-now-essential-to-restore-trust/

15.     The number of prominent people who have received the products advertised as "vaccines" and "boosters" and gone on to catch COVID-19 makes the reality difficult to ignore. For example, Dr. Anthony Fauci (director of the National Institutes of Allergy and Infectious Diseases) — fully "vaccinated" and "boosted" — caught COVID-19 in June 2022, took Paxlovid and promptly caught it again.[3]

16.     It is common knowledge that President Joe Biden — vaccinated and double-boosted[4] — recently recovered from another bout of COVID-19.  He received his second booster dose on Wednesday, March 30, 2022, and tested positive for COVID-19 on July 21, 2022, just 15 weeks later.  He took Paxlovid, and (like Dr. Fauci) caught COVID-19 again.[5]  It is also common knowledge that First Lady Jill Biden — twice "vaccinated" and twice "boosted,' according to her spokesperson — has also caught COVID-19.[6]  It was also widely reported that former President

---

[3] https://www.cnbc.com/2022/07/27/as-more-people-report-covid-rebounds-after-paxlovid-experts-insist-cases-are-rare.html

[4] https://www.politico.com/news/2022/03/30/biden-receive-second-covid-booster-00021667

[5] It is also well known that the "vaccinated" and thrice-boosted Canadian Prime Minister, Justin Trudeau, who is 50 years old, has caught COVID-19 twice (so far).  He was "vaccinated" on April 23, 2021, received a booster on January 4, 2022, caught COVID-19 later that month, received a second shot in April 2022, caught COVID-19 for the second time in June, then got a third "booster" shot in July.
https://www.cnn.com/2022/06/13/americas/justin-trudeau-covid19-intl/index.html;
https://www.businessinsider.com/justin-trudeau-got-moderna-booster-shot-after-his-astrazeneca-jab-2021-7;
https://www.politico.com/news/2022/06/13/trudeau-positive-covid-00039165

[6] https://www.reuters.com/world/us/us-first-lady-jill-biden-tests-positive-covid-19-statement-2022-08-16/

Barack Obama received his "vaccination." in early March, 2021.[7]  In March 2022, ex-President Obama — "vaccinated" and "boosted" — announced that he had caught COVID-19.[8]

17. The inefficacy of the products is something that public health officials are now acknowledging publicly.  Dr. Deborah Birx, former White House Coronavirus Response Coordinator, stated recently: "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines."[9]  Similarly, as former CDC director Dr. Tom Frieden stated, "protection against infection through vaccination is something of a flash-in-the-pan phenomenon."  Dr. Anthony Fauci now concedes that vaccine-induced immunity "isn't durable":

> "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[10]

18. Acknowledging this reality, the CDC changed its COVID-19 guidance in August 2022, so that its prevention recommendations "no longer differentiate based on a person's vaccination status."[11]  The CDC now concedes that the products advertised as COVID-19 vaccines do not prevent recipients from catching, getting sick from, and spreading COVID-19.

19. It is now clear that Pfizer did not even test for whether its products would prevent recipients from spreading COVID-19.  On October 10, 2022, when Robert Roos MEP asked

---

[7] https://www.harpersbazaar.com/celebrity/latest/a35810004/michelle-obama-barack-obama-vaccine-selfie/; and https://thehill.com/blogs/in-the-know/in-the-know/542736-obamas-vaccinated-against-covid-19/

[8] https://www.cnn.com/2022/03/13/politics/barack-obama-covid-positive/index.html

[9] https://youtu.be/8AYqTgtIgLA

[10] https://www.marketwatch.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525?siteid=nf-rss

[11] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

Janine Small (President of International Developed Markets at Pfizer) whether Pfizer tested the "vaccine" to determine whether it would stop transmission, Ms. Small informed the European Union Parliament that the answer to the question is "no."

20. Figures from the Massachusetts Department of Public Health (DPH) figures show that since at least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

21. Massachusetts DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19.

22. The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System.

23. In mid-July the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases, i.e. people who were injected with the products and then caught the disease. The DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated." It does not say why.

24. The latest — and apparently final — weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

- As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

- 10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[12]

---

[12] Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

25.     Below the figures, the DPH includes this note about undercounting both of cases and hospitalizations:

> Identification of cases in vaccinated people relies on matching data between the system of record for cases and vaccinations. The number of cases in vaccinated people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

26.     For most people who display some symptoms of COVID-19, those symptoms are mild (e.g. sore throat, slight cough, and runny nose) and do not require a visit to a healthcare provider. If a person with COVID-19 does not report the infection to a healthcare provider, nobody enters the case into a healthcare provider's database, and it does not appear in the DPH figures.

27.     Accordingly, the DPH case count of 617,337 "fully vaccinated" people who subsequently caught COVID-19 excludes those who do not report the fact to a healthcare provider.  It also excludes people who were injected with the products but caught COVID-19 within the 14-day period prior to them becoming "fully vaccinated" according to the Department's definition of that term.

## CLAIM FOR RELIEF

### COUNT 1

### Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a)

### BMC discriminated against Harmon on the basis of her religion

28.     Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

29. Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

30. Plaintiff informed Defendant of the conflict.

31. Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely denying that her beliefs are religious in nature, inducing her to renounce her beliefs, and terminating her employment.

32. Defendant discriminated against Plaintiff on the basis of her religion in violation of 42 U.S.C. § 2000e-2(a) as follows:

33. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

34. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

35. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

36. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

37. Defendant discriminated against Plaintiff on the basis of her religion in violation of the Civil Rights Act, Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a).

38. As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## COUNT 2

### Violation of the Massachusetts General Laws Chapter 151B

### BMC discriminated against Harmon on the basis of her religion

39. Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

40. Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

41. Plaintiff informed Defendant of the conflict.

42. Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely denying that his beliefs are religious in nature, inducing her to renounce her beliefs and terminating her employment.

43. Defendant discriminated against Plaintiff on the basis of her religion in violation of Chapter 151B of the Massachusetts General Laws (M.G.L. c. 151B) as follows:

44. Defendant failed to engage with Plaintiff in an interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

45. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

46. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from receiving the products advertised as COVID-19 vaccines.

47. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

48. Defendant discriminated against Plaintiff on the basis of her religion in violation of M.G.L. c. 151B.

49. As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

B. Award Plaintiff damages (including damages for emotional distress) plus her costs and her reasonable attorney's fees, and

C. Order such other and further relief as the Court deems just and appropriate.

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issue so triable pursuant to Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

|  |  |
|---|---|
|  | Respectfully Submitted<br>Tara Harmon<br>By Her Attorney:<br><br>_Peter Vickery_<br>Peter Vickery, Esq.<br>Bobrowski & Vickery, LLC<br>27 Pray Street<br>Amherst, MA 01002<br>BBO# 641574<br>Tel. (413) 992 2915<br>Email: peter@petervickery.com |
| October 31, 2022 |  |